IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| James Davis,<br>    Plaintiff,<br><br>v.<br><br>Dr. Reese, et al.,<br>    Defendants. | )<br>)<br>)<br>)  1:08cv96 (LMB/BRP)<br>)<br>)<br>) |

FILED MAR - 4 2009 CLERK, U.S. DISTRICT COURT ALEXANDRIA, VIRGINIA

## MEMORANDUM OPINION

James Earl Davis, currently a federal inmate proceeding pro se, has filed a civil rights action pursuant to 42 U.S.C. § 1983, seeking damages for allegedly inadequate medical care he received while confined at the Northern Neck Regional Jail in 2007. In his Amended Complaint, which is the operative complaint in the case, plaintiff alleges in essence that defendants failed to provide him with proper medication for his seizure disorder or to render adequate aid and protection when seizures occurred. Plaintiff names as defendants the Northern Neck Regional Jail and five of its staff members, Superintendent Jeffery Frazier, Major Ted Hull, Dr. William Reese, and Nurses Carolyne Neal and Trinket Snydor, and seeks an award of monetary damages in the amount of $2,000,000.00.

By Order dated July 22, 2008, plaintiff's claims against the Northern Neck Regional Jail were dismissed with prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915A(b)(1), and the Jail was dismissed as a defendant in this case. The remaining defendants were allowed thirty (30) days within which to file dispositive motions. On August 20, 2008, the individual defendants filed motions for summary judgment, pursuant to Fed. R. Civ. P. 56, along with affidavits and a brief in support of their motions. Defendants also filed the Notice required by Local Civil Rule 7(K), and

1

plaintiff was given the opportunity to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). After plaintiff was granted an extension of time within which to file his response, he submitted motions to deny each of the individual defendants' summary judgment applications on November 4, 2008, as well as a Motion to Subpoena Documents. On February 12, 2009, plaintiff moved for the appointment of counsel and for an extension of time to submit a reply to defendants' amended answers to the complaint. For the reasons that follow, defendants' motions for summary judgment will be granted, plaintiff's motions to deny summary judgment will be denied, and plaintiff's remaining outstanding motions will be denied as moot.

## I. Background

The following material facts are uncontested. Plaintiff was admitted to the Northern Neck Regional Jail ("NNRJ") with a history of seizures. Reese Aff. ¶ 5.[1] A medical transfer sheet from the medical department of the Rappahannock Regional Jail provided to the NNRJ staff indicated that Davis suffered from a current medical condition of seizures which required immediate attention. Reese Aff. ¶ 6, Ex. A. The transfer sheet also indicated that Davis was on 200 mg. of Carbatrol, administered by mouth twice daily. Id. Davis thereafter received his medication from NNRJ as prescribed, unless he refused to take the medication or otherwise was unavailable for medication call. Reese Aff. ¶ 6.

After his arrival at NNRJ, plaintiff requested to be seen by a neurologist. Reese Aff. ¶ 7. On February 13, 2007, plaintiff was referred to a neurologist for evaluation of his seizure disorder, and the first available appointment that could be arranged was March 23, 2007. Davis was housed in the

---

[1] All of the individual defendants have submitted nearly identical affidavits in support of their summary judgment motions. (Docket ## 65 - 69) Therefore, references to the affidavit of Dr. Reese will serve as reference to the position of all defendants, unless otherwise noted.

medical area for observation and monitoring of seizure activity, and tests for his Carbatrol level and glucose tolerance were ordered. Reese Aff. ¶ 8, Ex. B.

On February 22, 2007, Davis was seen by Dr. James Dudley, an associate physician at NNRJ. Plaintiff reported to Dr. Dudley that he believed that anxiety triggered his seizures and that he had taken anxiety medication in the past. Reese Aff. ¶ 9. Dr. Dudley concluded from his examination that plaintiff was in no acute distress, and that his gait and strength were normal. Dr. Dudley increased plaintiff's dosage of Tegretol from 200 mg. twice daily to 200 mg. each morning and 400 mg. each evening. Id. Blood was to be drawn to check plaintiff's Tegretol and hemoglobin levels in a week, and he was to be housed where he could be monitored for possible seizure activity. Id. Davis was placed in F Pod, where officers performed visual checks on each inmate twice hourly. Id.

On March 2, 2007, lab test reports indicated that plaintiff's Tegretol level was within therapeutic range. Reese Aff. ¶ 10. However, on March 5, 2007, test results indicated that his hemoglobin level was elevated. Reese Aff. ¶ 11. The following day, Dr. Reese ordered that the Tegretol be changed to its brand name Carbatrol, "by inmate request," at the same dosage as previously ordered. Reese Aff. ¶ 12, Ex. C. On March 13, after a diagnosis of diabetes was established, Davis was ordered to take 2 mg. of Amaryl daily, but Davis stated that he would refuse to do so until he saw the neurologist. Reese Aff. ¶ 14.

On March 23, 2007, Davis was seen by Dr. John Wittman, a neurologist at Neurological Associates in Richmond, Virginia. Plaintiff reported to Dr. Wittman that he had suffered from seizures since 2001. His episodes usually began with an anxiety attack, he would be unable to breathe, and for one to two minutes he would lose consciousness and experience bilateral shaking

and sometimes tongue biting and urinary incontinence. Reese Aff. ¶ 15, Ex. D. Plaintiff stated that he got anxiety attacks two or three times per week but could abort them by breathing into a paper bag, and reported that he had had a couple of seizures in the preceding six months. Id. Plaintiff said that he had been on 200 mg. of Carbatrol twice daily and that the doctor at the jail had increased his nighttime dose to 400 mg., but "his head was pounding and he was unable to take it." Plaintiff had similar side effects with the Amaryl he took for his diabetes, he had been on Dilantin in the past but did not feel well on it, and immediate release Tegretol had proven ineffective. Id. Based on this history, Dr. Wittman changed plaintiff's medication from Carbatrol to Topamax, and ordered that the dosage of Carbatrol was to be decreased and then was to be discontinued. Id. Plaintiff then was to receive Topamax, 25 mg. twice daily for a week, then 50 mg. twice daily for a week, 75 mg. twice daily for an additional week, and finally 100 mg. daily beginning with the fourth week Id. Dr. Wittman was to reassess plaintiff in approximately three months, at which time it was anticipated that an electro-encephalogram would be performed. Id.

On March 30, 2007, Davis was given his medication as prescribed. At 1115 hours, defendant Nurse Snydor was called to A Pod, where plaintiff then was housed, when Lt. Herbert Wright reported that plaintiff had fallen and appeared to have had a seizure. Snydor Aff. ¶ 17. Upon her arrival, Nurse Snydor observed Davis foaming at the mouth but not suffering body tremors. Plaintiff's eyes were fixed but slowly reactive to light, and he responded to a sternal rub. Id. Snydor took his vital signs, and then plaintiff was placed on a stretcher and transported to medical, where he had to be restrained to prevent him from causing injury to himself or others. Id. Any injuries plaintiff received during the incident were the result of his own struggling against the restraints. Reese Aff. ¶ 16. At 1150 hours, plaintiff's vital signs again were taken. Snydor Aff. ¶ 17. At 1200

hours, he was up to the bathroom, and at 1210 he was up for a drink of water and was standing in the cell door in medical. Plaintiff was then placed in a medical cell for observation. At 1335 hours, a check of his vital signs was repeated. Id.

On April 1, 2007, plaintiff arrived at Riverside Tappahannock Hospital. At 1910 hours, he was transported in stable condition to VCU Medical Center in Richmond, because Tappahannock Hospital had no neurologist. Plaintiff arrived at VCU Medical Center for evaluation of his seizures at 2157 hours, and was treated with 600 mg. Tegretol. Plaintiff was released back to the jail in stable condition. Snydor Aff. ¶ 18.

In opposition to the defendants' summary judgment applications, plaintiff has filed motions to deny their requested relief. (Docket ## 80 - 84) Contrary to the express instructions set forth in the defendants' "warning[s] pursuant to Local Rule 7(K)" and the requirements of Roseboro, plaintiff has failed in each instance to "offer[] affidavits (written statements signed before a notary public and under oath) or by filing sworn statements (bearing a certificate that it is signed under penalty of perjury)." (Docket ## 60 - 64) Instead, plaintiff's "motions" consist merely of unsworn assertions. Therefore, to the limited extent that plaintiff takes issue with the facts to which the defendants attest, his motions are of no evidentiary value.[2]

---

[2]Specifically, plaintiff contradicts defendants' factual recitations as to the following particulars: Plaintiff denies ever refusing his seizure medication, and states that "nurse(s) did not always bring seizure meds to plaintiff as prescribed twice a day." He reiterates that he did not receive medication twice a day during the week he transitioned from Carbatrol to Topamax, and he asserts that an officer told his cellmate that Nurse Neal said he faked one of his seizures. (Docket # 80, ¶¶ 2, 11, 12) In her affidavit supporting her motion for summary judgment, Nurse Neal attests that she did not make any statement that Davis was faking a seizure. Neal Aff. ¶ 20.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

## III. Analysis

Summary judgment in favor of defendants Frazier, Hull, Reese, Neal and Snydor is appropriate because the pleadings, affidavits, and exhibits on file demonstrate that the medical care plaintiff received at NNRJ did not violate his rights under the Eighth Amendment.[3] To state a cognizable Eighth Amendment claim for denial of medical care, plaintiff must allege facts sufficient to show that jail officials were deliberately indifferent to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 105 (1976); Staples v. Va. Dep't of Corr., 904 F.Supp. 487, 492 (E.D.Va. 1995). However, to establish that inadequate medical treatment rises to the level of a constitutional violation, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 105; see also Staples v. Va. Dep't of Corr., 904 F. Supp. 487, 492 (E.D. Va. 1995). Thus, plaintiff must allege two distinct elements to state a claim upon which relief can be granted. First, he must allege a sufficiently serious medical need. See, e.g., Cooper v. Dyke, 814 F.2d 941, 945 (4th Cir. 1987) (determining that intense pain from an untreated bullet wound is sufficiently serious); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978) (concluding that the "excruciating pain" of an untreated broken arm is sufficiently serious). Second, he must allege deliberate indifference to that medical need.

Under this second prong, an assertion of mere negligence or even malpractice is not enough

---

[3]Under ordinary circumstances, supervisory officials like Superintendent Frazier and Major Hull may not be held liable for constitutional injuries inflicted by their subordinates. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (citing Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984)). In the amended complaint, plaintiff does not allege that either of these defendants had any involvement in or knowledge of his medical treatment, so it appears that Frazier and Hull were sued on the basis of their supervisory positions. However, as both subsequently submitted affidavits attesting to personal knowledge of plaintiff's medical treatment at NNRJ and opining as to the quality of that care, application of these authorities in this case now would be inappropriate.

to state an Eighth Amendment violation; instead, plaintiff must allege deliberate indifference "by either actual intent or reckless disregard." Estelle, 429 U.S. at 106; Daniels v. Williams, 474 U.S. 327, 328 (1986); Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). A prisoner's disagreement with medical personnel over the course of his treatment does not make out a cause of action. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam); Harris v. Murray, 761 F. Supp. 409, 414 (E.D. Va. 1990). Further, "[a] complaint that a physician has been negligent in diagnosing . . . a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 106 (1976). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." Miltier, 896 F.2d at 851. However, to prevail, the prisoner must demonstrate that defendants' actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Id. (citations omitted).

At this juncture, it is apparent that plaintiff's claim of inadequate medical care during his confinement at NNRJ does not rise to the level of an Eighth Amendment violation. Assuming that plaintiff's seizure disorder is a serious medical condition warranting Eighth Amendment protection, it is abundantly clear on the record that defendants did not exhibit reckless disregard of plaintiff's medical needs. To the contrary, as defendants' affidavits and exhibits demonstrate, plaintiff's pre-existing seizure disorder was recognized immediately upon his receipt by NNRJ, and efforts were made to monitor his condition and to supply him with appropriate medication throughout his incarceration at that facility. Plaintiff's condition was evaluated both by staff physicians and by an outside neurological specialist, and he was transported for hospital care when a seizure did occur. Although it is apparent that plaintiff disagrees with the medical care he received, the uncontested

8

evidence demonstrates that defendants' actions in response to plaintiff's seizure disorder and one seizure which did occur were not "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier, 896 F.2d at 851. Even if plaintiffs' unsworn responses to defendants' summary judgment motion were to be taken into consideration and assumed to be true, see n. 2, they still would fall short of creating a genuine issue of material fact sufficient to alter that conclusion. Accordingly, no violation of plaintiff's Eighth Amendment rights occurred, and defendants are entitled to the summary relief they seek.

## IV. Conclusion

For the foregoing reasons, defendants' Motions for Summary Judgment will be granted, and plaintiffs' Motions to Deny Summary Judgment will be denied. This disposition renders moot plaintiff's remaining motions seeking to subpoena documents regarding jail policies from NNRJ, for the appointment of counsel, and for an extension of time to respond to defendants' amended answers to the complaint. An appropriate Order and Judgment shall issue.

Entered this 4th day of March 2009.

/s/
Leonie M. Brinkema
United States District Judge

Alexandria, Virginia

9